IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD ) <br> OF TEAMSTERS, AIRLINE         ) <br> DIVISION,                     ) <br> 25 Louisiana Avenue NW        ) <br> Washington, DC 20001          ) <br>                                ) <br> and,                          ) <br>                                ) <br> INTERNATIONAL                 ) <br> BROTHERHOOD OF TEAMSTERS,     ) <br> LOCAL UNION NO. 618,          ) <br> 9040 Lackland Road            ) <br> St. Louis, MO 463114          ) <br>                                ) <br>           Plaintiffs,   ) <br>                                ) <br>           v.           ) <br>                                ) <br> GOJET AIRLINES, LLC           ) <br> 11495 Navaid Road             ) <br> Bridgeton, Missouri 63044     ) <br> Statutory Agent               ) <br> CT Corporation Systems        ) <br>                                ) <br> 120 South Central Avenue      ) <br> Clayton, MO 63105             ) <br>                                ) <br>           Defendant.    ) | Case No.:_____ |

**PLAINTIFFS' COMPLAINT**
**FOR VIOLATIONS OF THE RAILWAY LABOR ACT**

Plaintiffs International Brotherhood of Teamsters, Airline Division and Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 618 for their Complaint against GoJet Airlines, LLC hereby state:

1

## JURISDICTION

1. This is an action for injunctive relief, declaratory judgment and other appropriate relief, brought pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (hereinafter "RLA" or "the Act"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Plaintiff unions challenge Defendant GoJet unlawful changes to their collective bargaining agreement ("CBA") with Defendant by its unilateral implementation of a new pay system for newly hired pilots. These mid term unilateral changes to pilots' rates of pay were not negotiated with the Union, were not agreed to by Union, and were not implemented pursuant to the mandatory, "major dispute" mechanisms set forth in the RLA. Accordingly, this unlawful "self-help" by Defendant GoJet violates the RLA status quo, entitling Plaintiffs to immediate injunctive and other appropriate relief. Accordingly, this court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

2. The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, does not deprive this Court of jurisdiction over the Plaintiffs' claims for injunctive relief because this action is brought to enforce the mandatory procedures of the RLA, 45 U.S.C. § 151, *et seq.*

## VENUE AND PERSONAL JURISDICTION

3. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this judicial district, conducts substantial operations in this district, and a substantial number of the events giving rise to this Complaint occurred in or relate to operations within the territorial confines of this Court's jurisdiction.

4. Personal jurisdiction over Defendant exists in this judicial district wherein Defendant is found, regularly conducts business and maintains substantial contacts.

**PARTIES**

5. Plaintiff International Brotherhood of Teamsters ("IBT" or "Union") is an unincorporated labor organization. Through its Airline Division, the IBT is the exclusive bargaining "representative," as defined by Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth, of the pilots employed by GoJet Airlines, LLC (hereinafter, "GoJet"). The IBT is headquartered at 25 Louisiana Avenue, N.W., Washington, D.C. 20001. This action is brought by the IBT in its own behalf and for and in the interests of all IBT-represented employees in the service of Defendant GoJet. On February 24, 2006 the National Mediation Board certified the IBT as the exclusive bargaining representative for the craft or class of pilots in the service of Defendant in Case Number R-7070. The IBT provides day-to-day representative services to the pilots employed by Defendant GoJet, LLC through Plaintiff International Brotherhood of Teamsters, Local Union No. 618.

6. Plaintiff International Brotherhood of Teamsters, Local Union No. 618 ("Local 618") is an unincorporated labor organization headquartered at 9040 Lackland Rd, St. Louis, MO 63114. Local 618 is a chartered affiliate of the IBT. As such, Local 618 provides labor representation services to pilots and other workers represented by the IBT. The IBT has delegated to Local 618 the exclusive

responsibility of providing day-to-day representation to the IBT-represented pilots employed by Defendant GoJet.

7. Defendant GoJet is a limited liability company that is wholly owned by Trans States Holdings, a privately owned holding company. Defendant GoJet operates as an airline, providing passenger commuter feeder service on flights for other airlines. Defendant GoJet's operating fleet consists of approximately forty-seven Bombardier CRJ 700-ERs and seven CJR 900-ERs aircraft. Its corporate headquarters are located at 11495 Navaid Road, Bridgeton, Missouri 63044.

8. Defendant GoJet is a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151, et seq.

## FACTS

9. After the NMB certified the IBT as the exclusive bargaining representative of Defendant GoJet Airline's pilots, the parties entered into collective bargaining agreements governing these employees' rates of pay, rules and working conditions, the most recent of which is attached hereto as Exhibit 1, and is hereafter referred to as the "CBA".

10. In accordance with Section 32 (Effective Date and Duration) of the CBA, the labor agreement became effective on March 5, 2016 and remains in effect until March 5, 2021. *Id.* The CBA renews itself for one-year periods thereafter, unless either party serves an RLA Section 6 notice no sooner than three hundred and sixty-five days and no later than twenty days prior to the March 5, 2012, or any subsequent amendable date thereafter. *Id.*

11. Section 5 (Compensation) of the CBA sets forth pay rates for GoJet pilots:

**Section 5    COMPENSATION**

A. Hourly Rates of Pay

1. A Pilot will be paid for all Pay Credit Hours (PCH) based on Status and Longevity in accordance with the Hourly Rates of Pay below:

   a. Captains 55-80 seat passenger jet aircraft

| 55-80 SEAT CAPTAINS HOURLY RATES | | | | | |
|---|---|---|---|---|---|
| Longevity | DOS | DOS+1 | DOS+2 | DOS+3 | DOS+4 |
| 1 | $67.39 | $68.23 | $69.08 | $69.94 | $70.81 |
| 2 | $69.62 | $70.49 | $71.37 | $72.26 | $73.16 |
| 3 | $71.97 | $72.87 | $73.78 | $74.70 | $75.63 |
| 4 | $74.19 | $75.12 | $76.06 | $77.01 | $77.97 |
| 5 | $76.46 | $77.42 | $78.39 | $79.37 | $80.36 |
| 6 | $78.80 | $79.79 | $80.79 | $81.80 | $82.82 |
| 7 | $81.04 | $82.05 | $83.08 | $84.12 | $85.17 |
| 8 | $83.53 | $84.57 | $85.63 | $86.70 | $87.78 |
| 9 | $86.34 | $87.42 | $88.51 | $89.62 | $90.74 |
| 10 | $89.24 | $90.36 | $91.49 | $92.63 | $93.79 |
| 11 | $91.96 | $93.11 | $94.27 | $95.45 | $96.64 |
| 12 | $94.82 | $96.01 | $97.21 | $98.43 | $99.66 |
| 13 | $97.68 | $98.90 | $100.14 | $101.39 | $102.66 |
| 14 | $100.65 | $101.91 | $103.18 | $104.47 | $105.78 |
| 15 | $103.49 | $104.78 | $106.09 | $107.42 | $108.76 |
| 16 | $106.14 | $107.47 | $108.81 | $110.17 | $111.55 |
| 17 | $108.70 | $110.06 | $111.44 | $112.83 | $114.24 |
| 18 | $111.24 | $112.63 | $114.04 | $115.47 | $116.91 |

   b. First Officers 55-80 seat passenger jet aircraft

| 55-80 SEAT FIRST OFFICERS HOURLY RATES | | | | | |
|---|---|---|---|---|---|
| Longevity | DOS | DOS+1 | DOS+2 | DOS+3 | DOS+4 |
| 1 | $36.50 | $36.96 | $37.42 | $37.89 | $38.36 |
| 2 | $38.59 | $39.07 | $39.56 | $40.05 | $40.55 |
| 3 | $40.58 | $41.09 | $41.60 | $42.12 | $42.65 |
| 4 | $41.68 | $42.20 | $42.73 | $43.26 | $43.80 |
| 5 | $43.00 | $43.54 | $44.08 | $44.63 | $45.19 |
| 6 | $44.33 | $44.88 | $45.44 | $46.01 | $46.59 |

5

> 2. The First Officer pay scales may be adjusted by the Company with or without modifying the remainder of the Agreement. However, the First Officer Pay scale will not exceed more than $41.00 in Year 1 without the agreement of the Union. The parties will meet and confer to discuss any such change prior to implementation.

*Id.*

12. Under Section 5.A. pilots are paid for all "Pay Credit Hours (PCH) based on Status and Longevity in accordance with the Hourly Rates of Pay" set forth in the foregoing Section 5.A pay charts. *Id.*

13. Section 2 (Definitions) defines "Pay Credit Hour (PCH)" as "the hourly unit by which Pilots will be compensated as set forth in the Agreement." *Id.*

14. Section 2 (Definitions) defines "Status" as a Pilot's "seat, equipment and Home Base." *Id.*

15. Section 2 (Definitions) defines "Seat" as "a Pilot's classification as either Captain or First Officer." *Id.*

16. Section 2 (Definitions) defines "Longevity" as "the period of time a Pilot has actively served as a Pilot with the Company. Longevity commences on the Pilot's first day of initial ground school training as specified in Section 11, Seniority, and accrual periods as specified in the Agreement." *Id.*

17. Section 5.B of the CBA only permits the Company to increase year-one First Officer pay rate up to $41.00 per hour without the need for additional negotiations with the Union, and in excess of $41.00 per hour with the agreement of the Union. *Id.*

18. Defendant GoJet has on numerous occasions expressed concern to the

6

IBT and Local 618 over its ability to attract and retain pilots, including during negotiations over the current CBA. During those negotiations, the IBT sought higher rates of pay for current and future GoJet pilots for the dual purpose of securing economic improvements for its members and protecting Defendant GoJet from the effects of the worsening national pilot shortage and its impact on hiring and retention. The IBT also permitted GoJet to raise First Officer pay when necessary as evidenced by the terms of Section 5.D of the CBA.

19. After the CBA went into effect on March 6, 2016, Defendant GoJet continued to express concerns over its ability to attract and retain pilots in an increasingly tight pilot labor market. In response, the IBT recommended that Defendant GoJet enter into mid-term negotiations with the IBT over mutually agreeable amendments to the CBA that would enhance the airline's ability to recruit new pilots and to retain the pilots already employed by the airline. To date, Defendant GoJet has declined the IBT's offer to negotiate mid-term improvements to the CBA.

20. While declining the IBT's offer to negotiate for improved terms and conditions of employment for new hires and incumbent pilots alike, Defendant GoJet on several occasions informed the IBT that it wanted to grant longevity "matches" to newly hired Captains based upon their years of employment, or "longevity," with other carriers.

21. Defendant GoJet never provided the IBT with a written proposal concerning such a "longevity" match; however, on various occasions it expressed a

7

desire to grant a "match" to some new-hire Captains based on a one-for-one or two-for-one ratio.  Under such a scheme, a new-hire Captain who had been employed by another carrier might receive an hourly starting pay rate equal to an incumbent GoJet Captain with four years or eight years of Longevity, for example, depending upon the match ratio used by the Defendant GoJet and the new hire pilot's years of service with another airline, rather than the one year of Longevity pay rate set forth in the Section 5.A. pay table.  Statements by representatives of Defendant GoJet about what type of ratio it preferred changed over time.

22.    In response, the IBT and Local 618 consistently told Defendant GoJet that offering new hires a so-called longevity match during the term of the March 6, 2016 CBA required negotiation and the Union's agreement.  Nonetheless, the IBT and Local 618 encouraged Defendant GoJet to meet with the Union for the purpose of exploring whether the parties could reach an agreement responsive to the carrier's recruitment and retention problems, including the possibility of longevity matches, while also addressing necessary improvements to the terms and conditions of employment for incumbent GoJet pilots.

23.    Defendant GoJet never accepted the IBT's offer to negotiate a solution to its pilot recruitment and retention problem.  Instead, in February of 2017, the carrier informed Union representatives that it had simply started hiring new Captains with a "longevity match."  And on or about February 15, 2017, Defendant GoJet's monthly pay report to Local 618 disclosed for first time that a newly-hired Captain was not receiving the hourly rate of pay for Captains with one year of

Longevity as required by the CBA, but instead the hourly rate of pay for Captains with four years of Longevity with GoJet. By paying this new hire Captain at a rate that was not based upon Longevity as defined in the CBA, but instead on some other basis, GoJet has unilaterally changed the express language of the CBA and breached the RLA status quo.

24. On information and belief, Plaintiffs have unilaterally granted Longevity to new hire pilots for pay purposes on the basis of their longevity or years of service with other carriers rather than on the basis set forth in the CBA – the Longevity they have earned during the time they have "actively served as a Pilot with the Company." Defendant GoJet did not disclose to the IBT or Local 618 whether it applied a one-for-one longevity match ratio, a two-for-one ratio, or some other method to determine the aforementioned pilot's rate of pay. To the extent Defendant GoJet unilaterally granted a longevity match, the carrier has not provided Local 618 with information regarding whether the match was based on the pilot's seniority with another carrier (i.e., the total length of time he was employed by another carrier) or time spent in active service with another carrier (e.g., not including time spent on furlough, leave of absence or in some other inactive status). Moreover, GoJet did not disclose to the IBT the identity of the pilot's former employer(s) that supposedly formed the basis for the longevity match. In fact, the newly hired pilot's extraordinary pay rate was not in any manner set apart from the approximately 600 other pilots whose name, employee number, pay rate, status, and address appeared on the monthly report. To date, the IBT and Local 618 have

9

not been provided with a written description of the longevity match scheme apparently implemented by the carrier.

25. Based on monthly pay reports received by Local 618 in March and April of 2017, Defendant GoJet hired at least ten additional Captains at hourly pay rates that differ from the rate of pay for Captains with up to one year of Longevity as that term is defined in Section 2 of the CBA. The monthly pay report provides the pilots' employee number, name, hourly pay rate and address, but no information has been provided to the Union by Defendant GoJet to regarding how it determined the pay rate for these pilots. On information and belief, GoJet is continuing to grant Longevity to new hires. As a result of Defendant GoJet's actions, incumbent GoJet Captains with more Longevity than new hires, as that term is defined in Section 2 of the CBA, are receiving a lower hourly rate of pay than the newly hired Captain.

26. Defendant GoJet cannot articulate a non-frivolous basis for claiming that the collectively bargained definition of Longevity includes time spent in the service of an employer other than GoJet. Indeed, the collectively bargained definition states the opposite: Longevity means "**the period of time a Pilot has actively served as a Pilot with <u>the Company</u>**." (emphasis added) (Exhibit 1). Section 1.A of the CBA defines "the Company" as "GoJet Airlines, LLC. *Id*. It makes no mention of other carriers. *Id*. The CBA is equally clear regarding appropriate hourly rate of pay for Pilots. Section 5.A. states, "A Pilot will be paid for all Pay Credit Hours (PCH) based on Status and **Longevity** in accordance with

10

the Hourly Rates of Pay" set forth in the pay tables. (emphasis added) *Id.* The reference to Longevity appearing in Section 5.A. is not modified by any mention of time spent in the employ or service of other carriers. Longevity as defined by the parties in Section 2 cannot be changed by Defendant GoJet except after exhausting the mandatory "major dispute" procedures under the Railway Labor Act, as amended, or by an agreement with the Union.

27. Section 2 (Management Rights) of the CBA does not permit Defendant GoJet to unilaterally modify the CBA nor to substitute a new definition of Longevity for the one agreed to by the parties in Section 2 of the CBA. (Exhibit 1). To the contrary, Defendant GoJet's management's rights are limited regarding longevity and pay because those rights have been "abridged by a specific provision of this Agreement." *Id.* In this case, Defendant GoJet's right to offer new hire pilots "longevity matches" is prohibited by the CBA because the parties clearly and unequivocally agreed upon a definition of Longevity in Section 2 and a pay system in Section 5 of the CBA based solely on the time a pilot spends in the service of GoJet Airlines, LLC, not other carriers.

28. Defendant GoJet cannot compel the IBT to amend the CBA during its term. If it seeks to change the Section 2 definition of the Longevity and the applicable rates of pay in Section 5 of the CBA, it must serve an RLA Section 6 notice at least thirty days but no sooner than three hundred and sixty-five days prior to the amendable date of the CBA as set forth in Section 32, or through an agreement with the Union during the term of the CBA. *Id.* The Union remains

11

willing to negotiate over improved rates of pay, rules and working conditions for its present and future members, but the carrier is prohibited from engaging in self-help in derogation of its obligation under the RLA, as amended.

29. Despite the IBT and Local 618's protestations, Defendant GoJet has not rescinded the so-called longevity matches. Based on information and belief, the carrier is continuing to hire and pay some new hire Captains a rate of pay that is based upon time spent in the service of the other carriers. By and through these actions, Defendant GoJet is violating the RLA, as amended.

## CAUSES OF ACTION

## COUNT I

### (Violation of Section 6 of the Act, 45 U.S.C. § 156)

30. The allegations of paragraphs 1 through 29 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

31. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

32. RLA Section 6 as set forth above provides that carriers shall not alter rates of pay, rules or working conditions except as provided in Section 6, which requires express notice and bargaining during the amendable period set forth by parties.

33. Defendant GoJet did not amend rates of pay, rules and working conditions as embodied in the CBA pursuant to Section 6 bargaining under the RLA, but instead unilaterally and unlawfully altered agreements affecting rates of pay, rules, or working conditions in continuing violation of Section 6, 45 U.S.C. § 156.

## COUNT II
### (Violation of Section 2, Seventh of the RLA)

34. The allegations of paragraphs 1 through 33 of the Complaint are incorporated by reference pursuant to Fed.R.Civ.P. 10(c).

35. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, states:

No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

36. The continuing acts and conduct by Defendant GoJet in unilaterally changing the GoJet pilots' rates of pay, rules and working as embodied in the CBA are in violation of the requirement RLA Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, that it refrain from changing agreements except in the manner proscribed in the CBA or Section 6 of the RLA.

## COUNT III
### (Violation of Section 2, First of the RLA)

37. The allegations of paragraphs 1 through 36 of the Complaint are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

38. Section 2, First of the RLA, 45 U.S.C. §152, First, states:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

39. The continuing acts and conduct by Defendant GoJet in unilaterally changing the GoJet pilots' rates of pay, rules and working conditions as embodied CBA are in violation of Section 2, First of the RLA, 45 U.S.C. §152, First, in that Defendant GoJet has not exerted every reasonable effort to maintain agreements as to rates of pay, rules and working conditions, nor to settle disputes.

## COUNT IV

### (Violation of Section 2, Fourth of the RLA)

40. The allegations of paragraphs 1 through 39 of the Complaint are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

41. Section 2, Fourth of the RLA, 45 U.S.C. §152, Fourth, provides:

No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization,...

42. The continuing acts and conduct by Defendant GoJet in unilaterally changing the GoJet pilots' rates of pay, rules and working conditions as embodied CBA are in violation of Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, in that such actions are intended and designed to interfere with and discourage GoJet pilots' right to join and remain members of a labor organization of their own choosing.

## IRREPARABLE INJURY

43. The allegations of paragraphs 1 through 42 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

44. The Defendant GoJet violations of its obligations under Sections 2, First and Fourth, Seventh and Section 6 of the Railway Labor Act set forth in Counts I-IV undermine the Act's statutory purpose to prevent disruptions to interstate commerce through bargaining in conference between carriers and their employees, and are therefore contrary to the public interest.

45. In addition to the irreparable injury to the statutory purposes and machinery of the Act, the illegal and wrongful acts and conduct described under Counts I-IV are continuing, and, if not enjoined, the Union and the pilots it represents will be injured in ways that cannot be measured accurately in terms of money, either as to extent or amount.

46. As a proximate result of the Defendant GoJet's' unlawful practices:

   a. The obligation to follow the bargaining procedures set forth

      in the Act will be undermined by Defendant GoJet's conduct;

   b. Defendant GoJet's conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the Act's procedures.

  47. The injury being suffered by the public, the Plaintiffs and the pilots the Union represents is irreparable and continuing; it is such as cannot be recovered in an action at law or in administrative or contractual proceedings.

  48. For all the foregoing reasons, the Plaintiffs and the pilots the Union represents are without an adequate remedy at law; Plaintiffs and the pilots will suffer serious, substantial and irreparable injury unless Defendant GoJet's unlawful conduct is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

  49. Defendant GoJet will not be injured by granting of injunctive relief requiring it to comply with its duties under the RLA and to restore the status quo. Defendant GoJet is required by statute to address any operational or financial need for changes to existing agreements only through bargaining under the procedures of the RLA.

## **PRAYER FOR RELIEF**

Plaintiffs request judgment against Defendant GoJet for the following relief:

A. That Defendants and their officers, agents and representatives be ordered to restore the status quo regarding the unilateral change and breaches outlined above, to cease and desist from violating the terms of the CBA, including the Section 5 (Compensation), and to adhere to the terms of that CBA and status quo unless and until those terms are altered in Section 6 of the RLA or the parties enter into a voluntary agreement;

B. That Defendants and their officers, agents and representatives be ordered to refrain from interfering with, influencing, coercing, or discriminating against the GoJet pilots represented by the IBT;

C. That Defendants be ordered to conspicuously post copies of this Court's order at Defendants' headquarters, crew room locations and flight operations facilities for a period of one-hundred eighty (180) days;

D. That Defendants be ordered to provide a copy of this Court's order to every GoJet pilot by certified mail at their most current address of record, in order to ameliorate the effects of Defendants' unlawful conduct on these pilots' rights under the RLA;

E. That Plaintiffs be awarded their costs;

F. That the Court issue preliminary and permanent injunctive relief restoring the status quo and enjoining Defendants and their officers, agents and representatives from modifying the CBA and status quo; and from interfering with, coercing, or discriminating against the pilots covered by the CBA; and

17

G. That the Court grant Plaintiffs all additional relief that may be equitable, including a reasonable award of attorneys' fees.

Dated: July 31, 2017

/s/ Trent Taylor
Trent Taylor (63287)
BARKAN MEIZLISH, LLP
250 East Broad Street, 10th Floor
Columbus, Ohio 43215
PH: 614-221-4221; FAX 614-744-2300
ttaylor@barkanmeizlish.com

Attorneys for Plaintiffs